**STUART F. DELERY**
Assistant Attorney General
**JUDRY L. SUBAR**
Assistant Branch Director, Federal Programs Branch
**BRADLEY H. COHEN** (D.C. Bar No. 495145)
bradley.cohen@usdoj.gov
Trial Attorney
Civil Division, Federal Programs Branch
20 Massachusetts Ave, N.W., Rm. 7338
Washington, D.C. 20001
Telephone:     (202) 305-9855
Facsimile:      (202) 616-8202
Attorneys for Defendants.

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

**OAK HARBOR FREIGHT LINES, INC.**

Case No. 3:13-CV-01100-HZ

                        **Plaintiff,**

**v.**

                                            **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**THOMAS E. PEREZ, in his official capacity as Secretary of Labor, U.S. Department of Labor.[1]**

                        **Defendant.**

---

[1] Under Fed. R. Civ. P. 25(d), Thomas E. Perez has been substituted for Seth D. Harris in his official capacity as Defendant in this case.

## TABLE OF CONTENTS

PAGE

INTRODUCTION ...................................................................................................... 1

STATUTORY AND REGULATORY BACKGROUND ........................................... 3

    I.     Surface Transportation Assistance Act ("STAA") ................................... 3

    II.    The Administrative Review Process under STAA ................................... 4

    III.   Oak Harbor's Claims in this Case .......................................................... 6

STANDARD OF REVIEW ........................................................................................ 8

ARGUMENT ............................................................................................................. 8

    I.     49 U.S.C. § 31105(d) Unequivocally Mandates that Oak Harbor's
        Claims Be Channeled Through the Administrative Review
        Process ....................................................................................................... 8

        A.   Statutory Channeling Requirements Do What They Say They Do:
            Require an Aggrieved Party to Follow the Statutorily Prescribed Method
            of Obtaining Administrative and Judicial Review ........................... 9

        B.   An Intent to Preserve Initial Review of the Secretary's Final Orders is
            Fairly Discernible from 49 U.S.C. § 31105(d) ............................... 11

        C.   The Channeling Requirement of 49 U.S.C. § 31105(d) Applies to Oak
            Harbor's Claims ............................................................................ 13

    II.    Oak Harbor Has Failed to Exhaust Its Administrative Remedies .......................... 17

    III.   Oak Harbor's Claims are not Reviewable under the APA .................................. 19

        A.   Oak Harbor's Claims Are Barred Because There is an Adequate Remedy
            Outside this Case .......................................................................... 20

        B.   There Has Been No Final Agency Order Adversely Affecting Plaintiff ....... 22

    IV.   Oak Harbor's Claims Are Not Ripe .................................................... 24

CONCLUSION ........................................................................................................ 28

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967) ................................................................................................ 24, 25

*Ariz. Christian Sch. Tuition Org. v. Winn*,
  131 S. Ct. 1436 (2011) ................................................................................................ 16

*Ass'n of Am. Med. Colls. v. United States*,
  217 F.3d 770 (9th Cir. 2000) ................................................................................ 25, 27

*Ass'n of Flight Attendants-CWA v. Chao*,
  493 F.3d 155 (D.C. Cir. 2007) ................................................................................ 17

*Block v. Cmty. Nutrition Inst.*,
  467 U.S. 340 (1984) ................................................................................................ 10

*Block v. North Dakota*,
  461 U.S. 273 (1983) ................................................................................................ 19

*Bowen v. City of New York*,
  476 U.S. 467 (1986) ................................................................................................ 19

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988) ................................................................................................ 21

*Brock v. Roadway Express, Inc.*,
  481 U.S. 252 (1987) ................................................................................ 3, 15, 16

*Carpenter v. Dep't of Transp.*,
  13 F.3d 313 (9th Cir. 1994) ................................................................................ 9

*Cavalier Tel., LLC. v. Va. Elec. and Power Co.*,
  303 F.3d 316 (4th Cir. 2002) ................................................................................ 17

*Charles Schwab & Co., Inc. v. FINRA*
  861 F. Supp. 2d 1063 (N.D. Cal. 2012) ................................................................ 9

*Darby v. Cisneros*,
  509 U.S. 137 (1993) ................................................................................................ 21

*E.E.O.C. v. Peabody W. Coal Co.,*
   610 F.3d 1070 (9th Cir. 2010) ........................................................... 20

*Eastern Bridge LLC v. Chao,*
   320 F.3d 84 (1st Cir. 2003) ................................................................ 14

*Ecology Ctr., Inc. v. U.S. Forest Serv.,*
   192 F.3d 922 (9th Cir. 1999) ............................................................. 23

*Elgin v. U.S. Dep't of the Treasury,*
   132 S.Ct. 2126 (2012) ........................................................................ 16

*Erectors Ass'n of the BTEA v. Sec'y of Labor,*
   62 F.3d 37 (1st Cir. 1995) .................................................................. 12

*Franklin v. Massachusetts,*
   505 U.S. 788 (1992) ............................................................................ 23

*Gallo Cattle Co. v. Dep't of Agric.,*
   159 F.3d 1194 (9th Cir. 1998) ........................................................... 20

*Hagans v. Lavine,*
   415 U.S. 528 (1974) ............................................................................ 16

*Heckler v. Ringer,*
   466 U.S. 602 (1984) ..................................................................... 17, 19

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
   511 U.S. 375 (1994) .............................................................................. 8

*Marshall v. Burlington Northern, Inc.,*
   595 F.2d 511 (9th Cir. 1979) ............................................................. 17

*McKart v. United States,*
   395 U.S. 185 (1969) ............................................................................ 10

*McNutt v. Gen. Motors Acceptance Corp.,*
   298 U.S. 178 (1936) .............................................................................. 8

*Med. Servs., Inc. v. Cal. Dep't of Healthcare Servs.,*
   No. C 12-2895 CW, 2013 WL 428721 (N.D. Cal. Feb. 1, 2013) ............ 24

*Mt. Adams Veneer Co. v. United States*,
   896 F.2d 339 (9th Cir. 1990) ........................................................ 23

*Myers v. Bethlehem Shipbuilding Corp.*,
   303 U.S. 41 (1938) .................................................................. 17

*Nat'l Taxpayers Union v. Soc. Sec. Admin.*,
   376 F.3d 239 (4th Cir. 2004) ....................................................... 14

*Nippon Miniature Bearing Corp. v. Weise*,
   230 F.3d 1131 (9th Cir. 2000) ...................................................... 23

*Owner-Operators Indep. Drivers Ass'n of Am., Inc. v. Skinner*,
   931 F.2d 582 (9th Cir. 1991) .......................................... 10, 11, 16

*Presbyterian Church (U.S.A.) v. United States*,
   870 F.2d 518 (9th Cir. 1989) ....................................................... 20

*Roadway Express, Inc. v. Brock*,
   624 F.Supp. 197 (N.D. Ga. 1985) .................................................. 16

*Ruhrgas AG v. Marathon Oil*,
   526 U.S. 574 (1999) .................................................................. 8

*Ruud v. U.S. Dep't of Labor*,
   80 Fed. Appx. 12, 2003 WL 22417078 (9th Cir. 2003) .......................... 23

*Shalala v. Ill. Council on Long Term Care, Inc.*,
   529 U.S. 1 (2000) ................................................................. 9, 10

*United States v. Sherwood*,
   312 U.S. 584 (1941) ................................................................. 19

*Steel Co. v. Citizens For A Better Env't*,
   523 U.S. 83 (1998) .................................................................. 8

*Sturm, Ruger, & Co., Inc. v. Chao*,
   300 F.3d 867 (D.C. Cir. 2002) .................................................. 12, 14

*Thunder Basin Coal Co. v. Reich*,
   510 U.S. 200 (1994) ........................................................... passim

*Toilet Goods Ass'n, Inc. v. Gardner*,
    387 U.S. 158 (1967) ............................................................................... 26

*U.S. W. Commc'ns v. MFS Intelenet, Inc.*,
    193 F.3d 1112 (9th Cir. 1999) ............................................................... 27

*Ukiah Valley Med. Ctr. v. Fed. Trade Comm'n*,
    911 F.2d 261 (9th Cir. 1990) ................................................................. 25

*United States v. Testan*,
    424 U.S. 392 (1976) ............................................................................... 19

*W. Truck Manpower, Inc. v. U.S. Dep't of Labor*,
    943 F.2d 56, 1991 WL 174622 (9th Cir. 1991) ...................................... 5

*Weinberger v. Salfi*,
    422 U.S. 749 (1975) ................................................................................. 9

*Winter v. Cal.Med. Review, Inc.*,
    900 F.2d 1322 (9th Cir. 1990) ............................................................... 25

*Yellow Freight Sys., Inc. v. Reich*,
    8 F.3d 980 (4th Cir. 1993) ................................................................. 4, 5

## STATUTES

5 U.S.C. § 701 ............................................................................................ 1

5 U.S.C. § 702 ............................................................................................ 7

5 U.S.C. § 703 .......................................................................................... 20

5 U.S.C. § 704 ................................................................................... passim

5 U.S.C. § 706 ............................................................................................ 1

28 U.S.C. § 1252 ...................................................................................... 15

29 U.S.C. § 659(a) ................................................................................... 12

30 U.S.C. § 816(a)(1) .............................................................................. 12

49 U.S.C. § 2305(d) (Supp. 1991) ............................................................ 5

49 U.S.C. § 31105 ................................................................................................................ passim


## **REGULATIONS**

29 C.F.R. §§ 1978.103-108 ................................................................................................ 18

29 C.F.R. §§ 1978.104-111 ................................................................................................ 16

29 C.F.R. § 1978.105 ......................................................................................................... 15

29 C.F.R. § 1978.106 ......................................................................................................... 27

49 C.F.R. §§ 391.81-123 .................................................................................................... 10

49 C.F.R. § 392.3 ......................................................................................................... passim


## **LEGISLATIVE MATERIALS**

H.R. Conf. Rep. 97-987, at 169 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3692, 3750 ................. 3

H.R. Conf. Rep. 110-259 at 355-56 (2007), *reprinted in* 2007 U.S.C.C.A.N. 119, 188 ............... 6

128 Cong. Rec. 32698 (1982) (remarks of Sen. Percy) ..................................................... 3

128 Cong. Rec. 32509-32510 (1982) (remarks of Sen. Danforth) ................................... 3

## INTRODUCTION

Congress enacted Section 405 of the Surface Transportation Assistance Act ("STAA"), Pub. L. No. 97-424, § 405, 96 Stat. 2097 (codified at 49 U.S.C. § 31105) to assist employee reporting of motor safety violations governing commercial motor vehicles.  Recognizing that employees in the transportation industry are the most likely individuals to detect safety violations, but that they might be reluctant to report them to authorities because they fear adverse employment consequences, Congress created a system of administrative and judicial review to protect these employees from discipline or discharge for filing a complaint or refusing to operate a vehicle that would violate a safety regulation.  In particular, it authorized the filing of employee complaints with the Department of Labor ("DOL"), an investigation by DOL of these administrative complaints, the issuance of findings and a preliminary order by the Secretary of Labor, a hearing before an administrative law judge to review those findings and order, the Secretary's issuance of a final order following that hearing, and then--and only then--a mechanism for judicial review, with such review being appropriate in a court of appeals, not in a district court.

DOL investigations into three employee administrative complaints filed against Plaintiff Oak Harbor Freight Lines, Inc. ("Oak Harbor") are the impetus for this lawsuit. Although Oak Harbor is not yet subject to any preliminary order, much less a final order by the Secretary with respect to these administrative complaints, it has rushed into court and filed a complaint against the Secretary of Labor Thomas E. Perez ("Secretary") claiming violations of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and Section 405 of STAA.  Oak Harbor seeks immediate injunctive and declaratory relief, alleging that the agency's investigation of Oak Harbor with respect to motor safety complaints filed by three of Oak Harbor's employees will

result in the Secretary's order that (according to Oak Harbor) will be arbitrary and capricious, contrary to the statute, and in excess of the Secretary's authority.  Relying solely upon a proposed settlement offer in one of these investigations to postulate its injury, Oak Harbor's complaint is not only premature but fails to abide by the administrative and judicial review mechanism established by Congress.  STAA's judicial review provision, 49 U.S.C. § 31105(d), mandates that Oak Harbor's challenge to the Secretary's anticipated order must be channeled through the administrative review process provided in 49 U.S.C. § 31105(b) before Oak Harbor may bring its claims into federal court, and in any case, Oak Harbor may only seek review of a final order in the court of appeals.  The Supreme Court has analyzed similar administrative channeling provisions and concluded that the district court is without jurisdiction.  *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 209-212, 218 (1994) (analyzing a similar administrative channeling requirement under the Mine Act).  Second, Oak Harbor has failed to exhaust its administrative remedies under STAA which requires that any objections that Oak Harbor has to the Secretary's findings or preliminary order regarding the employee complaints be filed as objections and that Oak Harbor request a hearing on the record.  It is only after this hearing before an administrative law judge that the Secretary issues a judicially reviewable final order. Third, Oak Harbor's claims, which rely exclusively upon the APA's waiver of sovereign immunity, are barred by two threshold requirements of 5 U.S.C. § 704 – namely, Oak Harbor has another adequate (and exclusive) remedy under STAA, and in any case, the Secretary's alleged settlement offer does not qualify as final agency action under the APA.  Finally, Oak Harbor's complaint is simply not ripe – since it challenges the Secretary's interpretation of STAA and motor safety regulation as applied to its employee.  Without agency findings and an agency order demanding specific relief with respect to that employee, Oak Harbor's claims are not fit for

judicial review. Moreover, Oak Harbor cannot demonstrate that it will suffer any immediate

harm pending the issuance of an agency order.   For all of these reasons, Oak Harbor's complaint

must be dismissed in its entirety for lack of subject matter jurisdiction, or in the alternative, for

failure to state a claim upon which relief can be granted.

**<u>STATUTORY AND REGULATORY BACKGROUND</u>**

**I.  Surface Transportation Assistance Act ("STAA")**

Congress enacted Section 405 of STAA to encourage employee reporting of

noncompliance with safety regulations governing commercial motor vehicles.  *See generally*

H.R. Conf. Rep. 97-987, at 169 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3692, 3750.  Congress

recognized that employees in the transportation industry are often best able to detect safety

violations and yet, because they may be threatened with discharge for cooperating with

enforcement agencies, they need express protection against retaliation and discrimination for

reporting these violations. *See*, *e.g.,* 128 Cong. Rec. 32698 (1982) (remarks of Sen. Percy); *id.,* at

32509–32510 (remarks of Sen. Danforth).  Section 405 of STAA, codified at 49 U.S.C. § 31105,

thus prohibits employers from discriminating against employees in the commercial motor

transportation industry for refusing to operate a motor vehicle that does not comply with

applicable state and federal safety regulations or for filing complaints alleging such

noncompliance.  *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 255 (1987).

Among the federal and state safety regulations covered by the statute is a regulation

issued by the Federal Highway Administration ("FHWA") prohibiting ill and fatigued drivers

from operating a commercial motor vehicle and motor carriers from requiring or permitting a

driver from doing so.  This regulation provides:

**Ill or fatigued operator.** No driver shall operate a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle. However, in a case of grave emergency where the hazard to occupants of the commercial motor vehicle or other users of the highway would be increased by compliance with this section, the driver may continue to operate the commercial motor vehicle to the nearest place at which that hazard is removed.

49 C.F.R. § 392.3. Employees who are threatened with retaliation may file a complaint with the

Occupational Safety and Health Administration ("OSHA") that may be investigated by the

Department of Labor under Section 405. Judicial review of the Secretary's findings is

conducted on a substantial evidence standard. *See Yellow Freight Sys., Inc. v. Reich*, 8 F.3d 980,

984-85 (4th Cir. 1993) (explaining that STAA forbids companies from sanctioning drivers who

decline to drive under dangerous or illegal conditions and holding that the Secretary's findings

were based on substantial evidence).

## II. The Administrative Review Process under STAA

An employee who believes that he or she has been threatened with retaliation for a

protected activity under section 405 may pursue an administrative action against the employer,

which begins with the filing of a complaint against an employer with OSHA. 49 U.S.C. §

31105(b). This complaint may include allegations that the employee was disciplined because of

a refusal to operate a vehicle where the operation of the vehicle would violate a regulation,

standard, or order concerning commercial motor vehicle safety. *See* 49 U.S.C. § 31105(a)(B)(i);

49 C.F.R. § 392.3.

Upon receiving a complaint under Section 405, the Secretary of Labor must conduct an

investigation and determine whether there is reasonable cause to believe that a violation has

occurred. 49 U.S.C. § 31105(b)(2)(A). If the Secretary decides that it is reasonable to believe

that a violation has occurred, then the Secretary shall include with his decision, a copy of

findings and a preliminary order.  *Id.*  No later than 30 days after the Secretary's written notice to

respondent, a person alleged to have committed the violation may file objections to the findings

and/or to the preliminary order and request a hearing on the record.  *Id.*, § 31105(b)(2)(B).  If a

hearing is not requested within the 30 days, the preliminary order is final and not subject to

judicial review.  *Id.*

     Not later than 120 days after the end of the hearing, the Secretary of Labor shall issue a

final order.  *Id.*, § 31105(b)(2)(B).  A person who is adversely affected by an order issued after a

hearing may file a petition for review in the court of appeals in which the violation occurred or

where the person resided on the date of the violation.  *Id.*, § 31105(d).  This review shall be

pursuant to the Administrative Procedure Act ("APA"), and shall be heard and decided

expeditiously, but the Secretary's order "is not subject to judicial review in a criminal or other

civil proceeding." *Id.*

     Thus, there is a path for judicial review in the court of appeals for employers who

disagree with the Secretary's decision in a particular adjudication.  *See*, *e.g.*, *Yellow Freight Sys.,

Inc.*, 8 F.3d at 984 ("Under the scheme established by Congress, the Secretary of Labor makes

final determinations on Surface Transportation Assistance Act violations subject to appellate

court review.") (internal citations omitted); *W. Truck Manpower, Inc. v. U.S. Dep't of Labor*, 943

F.2d 56, 1991 WL 174622, at *1 (9th Cir. 1991) (unpublished) (pursuant to 49 U.S.C. § 2305(d)

(Supp. 1991), court of appeals had jurisdiction over employer's petition for review of the

Secretary's final order, which had held that employer had violated STAA).

     The Secretary of Labor is permitted to assert a claim in federal district court to enforce a

secretarial final order.  *See* 49 U.S.C. § 31105(e).  In 2007, Congress amended STAA to provide

limited district court review for employees to assert a cause of action, if the Secretary delays in

issuing a final order.  *See* Implementing Recommendations of the 9/11 Commission Act, Pub. L.

No. 110-53, § 1536, 121 Stat. 266 (2007) (codified at 49 U.S.C. § 31105(c)).[2]  Any other party

who is adversely affected by the Secretary's order and wishes to obtain review of that order is

still required to seek a hearing before an administrative law judge with further review before the

U.S. Court of Appeals.  *See* 49 U.S.C. § 31105(d).

### III. Oak Harbor's Claims in this Case

According to Oak Harbor's complaint, it maintains an attendance policy that tracks each

employee's unscheduled absence, and under which a driver who asserts that he or she is too ill or

fatigued to drive safely is permitted to work a task other than driving to avoid accruing an

absence.  Compl., ¶¶ 8, 10.  However, if the driver calls in sick and does not report to work, the

absence is listed as unscheduled.  *Id.*, ¶ 11.  Oak Harbor employees Shawn Flanery, Jeffrey

Murillo, and Cade Mason, have all filed complaints with OSHA alleging that Oak Harbor

suspended or terminated their employment in retaliation for refusal to drive when ill or fatigued.

*Id.*, ¶¶ 12, 13.  Oak Harbor states that it has received written notice of each of these

administrative complaints from the Secretary, including the additional allegation that Oak

Harbor's attendance policy violates Section 405 of STAA.  *Id.*, ¶¶ 14, 16, 18, 19. According to

Oak Harbor's complaint, on June 24, 2013, the Secretary, through a DOL investigator, informed

Oak Harbor that OSHA agrees there is sufficient evidence that Oak Harbor violated Section 405

when it discharged Shawn Flanery and that the proposed settlement required, *inter alia*, that Oak

Harbor reinstate Flanery, pay him back wages and punitive damages, and revise its attendance

---

[2] The House Conference Report makes clear that the purpose behind this amendment was to
provide "**employees** with additional administrative and civil remedies;" there was thus an intent
"to protect **covered employees** in the course of their ordinary duties" so that "**employees** can
report their concerns without the fear of possible retaliation or discrimination from employers."
H.R. Conf. Rep. 110-259 at 355-56 (2007), *reprinted in* 2007 U.S.C.C.A.N. 119, 188 (emphasis
added).

policy. *Id.*, ¶ 20.  The investigator also encouraged Oak Harbor to settle the Murillo and Mason complaints.  *Id.*, ¶ 21.  Oak Harbor has responded in this complaint that its employees were not engaged in protected activity and that its attendance policy does not violate the regulation on ill and fatigued drivers.  *Id.*, ¶¶ 22-28.  There are no allegations in plaintiff's complaint that Oak Harbor signed a settlement agreement or received an order  from the Secretary (much less that it filed objections with respect to that order and requested a hearing before an administrative law judge).

Oak Harbor alleges that the DOL investigator's recommendation as described in the settlement offer (*i.e.*, that there is sufficient evidence to show that Oak Harbor violated the employee protection provision of STAA when it discharged Shawn Flanery) has caused Oak Harbor to be adversely affected by the Secretary's actions, constituting agency action as defined by 5 U.S.C. § 702, and that it is subject to final agency action, for which there is no other adequate remedy, citing 5 U.S.C. § 704.  *See* Compl., Second Claim for Relief, ¶ 2.  Oak Harbor alleges that in making such a recommendation in the context of proposing such a settlement offer, the Secretary has, in effect, issued an unpublished interpretation of 49 C.F.R. § 392.3 and 49 U.S.C. § 31105, that this purported decision regarding an enforcement action against Oak Harbor is arbitrary and capricious and contrary to the statute, and that it is in excess of the Secretary's authority.  *Id.*, ¶ 3.  Oak Harbor also claims that existing procedures for administrative review of the anticipated enforcement action against Oak Harbor are inadequate, *id.*, ¶ 4.  Plaintiff seeks an injunction preventing the Secretary from initiating an enforcement action against Oak Harbor, and a declaratory judgment stating that Oak Harbor's attendance policy does not violate the Department's regulation on ill or fatigued operators or Section 405's

prohibition of discharging employees who refuse to operate a vehicle that did not comply with

applicable federal safety regulations. *See* Compl., First and Third Claims for Relief.

## STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction and possess only those powers which are

provided by the Constitution or federal statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511

U.S. 375, 377 (1994). Plaintiff must establish that the federal court possesses jurisdiction over

its claims. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182 (1936) ("It is

incumbent upon the plaintiff properly to allege the jurisdictional facts, according to the nature of

the case."). If plaintiff fails to do so, the Court should dismiss the case pursuant to Fed. R. Civ.

P. 12(b)(1) or of its own volition. *See Ruhrgas AG v. Marathon Oil*, 526 U.S. 574, 583 (1999)

("[S]ubject-matter [jurisdiction] must be policed by the courts on their own initiative ….")

(citing Fed. R. Civ. P. 12(h)(3) ("Whenever it appears … that the court lacks jurisdiction of the

subject matter, the court shall dismiss the action."); *see also Steel Co. v. Citizens For A Better

Env't*, 523 U.S. 83, 94 (1998) ("'Without jurisdiction the court cannot proceed at all in any

cause. Jurisdiction is [the] power to declare the law, and when it ceases to exist, the only

function remaining to the court is that of announcing the fact and dismissing the cause.'")

(citations omitted)

## ARGUMENT

**I.  49 U.S.C. § 31105(d) Unequivocally Mandates that Oak Harbor's Claims Be
     Channeled Through the Administrative Review Process**

49 U.S.C. § 31105(d) states that:

> **Judicial review and venue.**--A person adversely affected by an order issued
> after a hearing under subsection (b) of this section may file a petition for review,
> not later than 60 days after the order is issued, in the court of appeals of the
> United States for the circuit in which the violation occurred or the person resided

on the date of the violation. Review shall conform to chapter 7 of title 5. The review shall be heard and decided expeditiously. An order of the Secretary of Labor subject to review under this subsection is not subject to judicial review in a criminal or other civil proceeding.

As explained below, this provision mandates that whatever challenge Oak Harbor wishes to bring as the Secretary's anticipated preliminary order (or to any other action by the Secretary related to this matter that Oak Harbor believes it may challenge) must be channeled through the administrative review process provided in 49 U.S.C. § 31105(b) before Oak Harbor may bring it in federal court, and that if Oak Harbor goes to federal court it must go to the court of appeals and not to a district court.[3]

A. **Statutory Channeling Requirements Do What They Say They Do:  Require an Aggrieved Party to Follow the Statutorily Prescribed Method of Obtaining Administrative and Judicial Review**

Statutory channeling requirements, such as 49 U.S.C. § 31105(d), are an established and well-accepted feature of the United States Code.  Channeling requirements are present in administrative review schemes created by the Mine Act, *see Thunder Basi*n, 510 U.S. at 207; the Medicare statute, *see Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 10, 13-14 (2000); the Hobbs Act, *see Carpenter v. Dep't of Transp.*, 13 F.3d 313, 317 (9th Cir. 1994); and the Social Security Act, *see Weinberger v. Salfi*, 422 U.S. 749 (1975).[4]  The Court of Appeals for this Circuit has also held that orders and actions of the Secretary of Transportation and FHWA

---

[3] Defendant asserts both that this court lacks subject matter jurisdiction because of the administrative channeling required by STAA, *see infra* at 8-16, and that Oak Harbor has failed to exhaust its administrative remedies, *see infra* at 16-19.  While these two concepts are inter-related, the former focuses on Congress's chosen path for administrative review and judicial forum, whereas the latter stresses the importance of allowing the agency to exercise its discretion or apply its expertise.

[4] A district court in this Circuit has also held that the disciplinary process for broker-dealers administered by the Financial Industry Regulatory Authority ("FINRA") under the Exchange Act is subject to an administrative channeling provision after which jurisdiction is vested in the U.S. Court of Appeals.  *See Charles Schwab & Co., Inc. v. FINRA*, 861 F. Supp. 2d 1063, 1069-1072 (N.D. Cal. 2012).

administrator pertaining to motor carrier safety and qualifications of commercial drivers are

subject only to review by the courts of appeals. *See Owner-Operators Indep. Drivers Ass'n of*

*Am., Inc. v. Skinner*, 931 F.2d 582, 590 (9th Cir. 1991) ("Challenges to motor carrier safety

regulations must be filed with the courts of appeals, rather than with the district courts.").

       While such channeling provisions can cause "occasional individual, delay-related

hardship," *Ill. Council*, 529 U.S. at 13, they carry important countervailing benefits.

Specifically, as recognized by the Supreme Court, administrative channeling requirements "let

the agency develop the necessary factual background upon which decisions should be based,"

*McKart v. United States*, 395 U.S. 185, 193-94 (1969); ensure that agency expertise can be

brought to bear on an issue, *Thunder Basin*, 510 U.S. at 215; preserve "executive and

administrative autonomy" by giving agencies the first chance to correct their own errors,

*McKart*, 395 U.S. at 194; serve the interest of judicial efficiency (because often times the agency

will indeed correct its own error), *id.* at 195; and "assures the agency greater opportunity to

apply, interpret, or revise policies, regulations, or statutes without possibly premature

interference by different individual courts applying 'ripeness' and 'exhaustion' exceptions case

by case." *Ill. Council*, 529 U.S. at 13.

       To determine whether Congress intended to require exhaustion of a statutorily created

administrative review process as a requisite to judicial review, courts ask whether an intent to

"allocate[] initial review to an administrative body . . . is 'fairly discernible in the statutory

scheme.'" *Thunder Basin*, 510 U.S. at 207 (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340,

351 (1984)). "Whether a statute is intended to preclude initial judicial review is determined from

the statute's language, structure and purpose, its legislative history, and whether the claims can

be afforded meaningful review." *Id.* (internal citations omitted). Because channeling

requirements merely delay judicial review, rather than preclude it entirely, they do not implicate the presumption that Congress does not intend to preclude judicial review of agency action. *Id.* at 207 n. 8 & 215.[5]

Indeed, the Ninth Circuit has addressed a very similar statutory scheme to that present here and held that claims arising in that context must be adjudicated through the administrative process with judicial review in the court of appeals. In *Owner-Operators*, an association of independent drivers challenged the application of safety regulations regarding drivers of commercial motor vehicles (in that case, drug testing regulations, *see* 49 C.F.R. §§ 391.81-391-123). 931 F.2d at 584. The court explained that while the APA would normally confer jurisdiction, Congress can design a separate judicial review path with respect to a statutory scheme. *Id.* at 585. After examining the language of that statute, the court concluded that "orders and actions" of the Secretary of Transportation and the Administrator of the FHWA were "subject to judicial review to the same extent and in the same manner as [Interstate Commerce Commission] actions." *Id.* at 586 (internal quotation marks omitted). Because the ICC statute required judicial review be conducted in the court of appeals after administrative review, the district court did not have jurisdiction over plaintiff's challenge to the motor safety regulation in question. *Id.* at 587.

### B. An Intent to Preserve Initial Review of the Secretary's Final Orders is Fairly Discernible from 49 U.S.C. § 31105(d)

The statute that applies here, 49 U.S.C. § 31105(d), makes clear that judicial review of an action brought by "[a] person adversely affected by an order" is to only occur "after a hearing"

---

[5] In *Thunder Basin*, the Supreme Court held that the Mine Act precluded district court jurisdiction over two pre-enforcement claims asserted by a mine operator against the Mine Safety and Health Administration ("MSHA"), based on the Act's comprehensive statutory review procedure and its legislative history. 510 U.S. at 207-09.

and to be done "in the court of appeals." 49 U.S.C. § 31105(d). A final order is issued by the

Secretary after the end of the hearing before the administrative law judge. 49 U.S.C. §

31105(b)(2)(C). However, if an adversely affected person fails to contest the Secretary's

preliminary order, then that order becomes final and is unreviewable. *See* 49 U.S.C.

31105(b)((2)(B) ("If a hearing is not requested within the 30 days, the preliminary order is final

and not subject to judicial review."). *Compare Sturm, Ruger, & Co., Inc. v. Chao*, 300 F.3d 867,

873 (D.C. Cir. 2002) (noting that the OSH Act "provides that if no contest is brought within that

period, the citation is 'deemed a final order ... not subject to review by any court or agency.'"

(citing 29 U.S.C. § 659(a)).

In addition, an appeal of the Secretary's final order to the court of appeals "shall be heard

and decided expeditiously." 49 U.S.C. § 31105(d). However, an order subject to review under

this subsection "***is not subject to judicial review*** in a criminal or other civil proceeding." *Id.*

(emphasis added). By employing this language, Congress made explicit that review in the court

of appeals is meant to be the exclusive path for judicial review. *Compare Thunder Basin*, 510

U.S. at 208 (adversely affected person may obtain review in the court of appeals, but court's

jurisdiction 'shall be exclusive and its judgment and decree shall be final.'") (citing 30 U.S.C. §

816(a)(1)) .

The Secretary of Labor is permitted to assert a claim in federal district court to enforce a

secretarial final order. *See* 49 U.S.C. § 31105(e).[6] However, the Secretary's authority to bring

---

[6] This limited grant of district court review is similar to those provided in the Mine Act and the
Occupational Safety and Health Act ("OSH Act"). *See Thunder Basin*, 510 U.S. at 209 ("The
[Mine] Act expressly authorizes district court jurisdiction in only two provisions, §§ 818(a) and
820(j), which respectively empower the *Secretary* to enjoin habitual violations of health and
safety standards and to coerce payment of civil penalties. Mine operators enjoy no
corresponding right but are to complain to the Commission and then to the court of appeals.")
(emphasis in original); *Ne. Erectors Ass'n of the BTEA v. Sec'y of Labor*, 62 F.3d 37, 39 (1st Cir.
1995) (although the OSH Act authorized the Secretary of Labor to bring certain actions in the

an action seeking an enforcement order, as well as district court jurisdiction for certain other actions brought by employees,[7] are not relevant to the case at bar.  These separate statutory grants of jurisdiction do not permit district court actions brought by those adversely affected by an order of the Secretary, such as the claims brought by Oak Harbor here, where the method that Congress created for challenging such an order is to challenge it in another court – and only after it is issued and appropriately litigated at the administrative level.

### C.  The Channeling Requirement of 49 U.S.C. § 31105(d) Applies to Oak Harbor's Claims

Plaintiff's claims here – to the extent they can be discerned – are analogous to those brought by the operator in *Thunder Basin*, and likewise fall outside the Court's jurisdiction.  At their core, Oak Harbor's challenges to DOL's position taken "in the course of the Secretary's investigation of complaints filed by three individuals," Compl. ¶ 4, boil down to the following:

- The Secretary has made an "unpublished interpretation of section 392.3 and Section 31105" in connection with the investigation under the STAA which is arbitrary, capricious, contrary to the text of the statute and Congressional intent, and therefore in excess of the Secretary's statutory authority.  *See* Compl., Second Claim for Relief, ¶ 3.

- The procedures provided by the Secretary for challenging this purported unpublished interpretation and the alleged threatened enforcement action anticipated against Oak Harbor are inadequate, and "have resulted in determinations by the Secretary that are not supported by substantial evidence." *Id.*, ¶ 4.  Plaintiff also alleges that these administrative procedures violate Oak Harbor's First Amendment rights and Fifth Amendment right to due process.  *Id.*, First Claim for Relief, ¶¶ 4(a)-(e).

Whether asserted as alleged violations of the APA or characterized as *ultra vires* conduct outside the statutory authority of STAA, or even as a due process violation, all of these factual

---

district court, district court jurisdiction was not available for pre-enforcement challenges brought by employers.).

[7] There is district court review for a limited set of actions brought by employees, including where the "Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint" the "*employee* may bring an original action at law or equity for de novo review in the appropriate district court of the United States."  *See* 49 U.S.C. § 31105(c) (emphasis added).

allegations "at root require interpretation of the parties' rights and duties" under STAA and the Secretary's regulations, and thus "fall squarely within the [Secretary's] expertise." *Thunder Basin*, 510 U.S. at 214. Accordingly, there is no reason why plaintiff cannot assert these same claims in an individual adjudication before an administrative law judge, and every reason for the Court to prohibit plaintiff's attempt to circumvent the review scheme that Congress created. *See*, *e.g.*, *Nat'l Taxpayers Union v. Soc. Sec. Admin.*, 376 F.3d 239, 244 (4th Cir. 2004) (plaintiff's First Amendment claims must be adjudicated through the administrative process laid out by the Social Security Act); *Sturm, Ruger, & Co.*, 300 F.3d at 875 (plaintiff was required to bring its challenge to agency's data collection initiative through the review process as laid out by the OSH Act); *Eastern Bridge LLC v. Chao*, 320 F.3d 84, 88-89 (1st Cir. 2003) (same).

Several aspects of Oak Harbor's lawsuit highlight the fact that it must be dismissed under *Thunder Basin*. First, Oak Harbor contends that DOL offered to settle the present dispute administratively, and that that offer represents a purported "unpublished interpretation" of a safety regulation. Even assuming that plaintiff could rely upon a settlement proposal to articulate a cause of action as Oak Harbor seeks to do here,[8] Oak Harbor's allegation that the Secretary has or will misinterpret 49 C.F.R. § 392.3, and that applying that interpretation in an enforcement proceeding may negatively affect Oak Harbor fits easily within the STAA administrative scheme and the Secretary's expertise. As required by the statute, following a decision, the Secretary must issue findings and a preliminary order. 49 U.S.C. § 31105(b)(2)(A). The facts regarding the complaints of three Oak Harbor employees, Flanery, Mason, and Murillo, and whether they faced retaliation by Oak Harbor for protected activity, remain unresolved at the administrative level. *See* Compl., ¶¶ 14-17, 20-21 (summarizing complaint

---

[8] As explained below, an agency's settlement proposal is not a "final agency action" as required by 5 U.S.C. § 704. *See infra* at 21-24.

filed by Flanery and offers of settlement made by OSHA investigator); Compl., ¶¶ 18, 19 (summarizing notice received regarding Mason and Murillo's respective complaints but providing no indication of a final decision by the Secretary). But the Secretary's findings and preliminary order, if issued, would inform Oak Harbor both of why the Secretary has reasonable cause to believe that Oak Harbor has retaliated against the complainant in violation of STAA and the relief being demanded. *See* 49 U.S.C. § 31105(b)(2)(A); 29 C.F.R. § 1978.105.  Until the end of such an administrative proceeding, it is difficult to ascertain exactly what decision (if any) has been made by the Secretary, and whether it is, as plaintiff alleges, a misapplication of the safety regulation in question.  In any case, plaintiff's claims with respect to 49 C.F.R. § 392.3 and 49 U.S.C. § 31105 can all be addressed by the Secretary and in the hearing before the administrative law judge – as intended by Congress.

Second, Oak Harbor asserts that it has been deprived of due process in challenging the Secretary's decision to prosecute the complaint and that the agency's determination is not supported by substantial evidence.  Specifically, in its claim for declaratory judgment relief, Oak Harbor alleges that the Secretary's proposed settlement is contrary to the statute and regulation, that the "unpublished interpretation" exceeds the Secretary's authority and that its application to Oak Harbor violates Oak Harbor's rights under the First Amendment and the Due Process Clause of the Fifth Amendment.  *See* Compl., ¶ 2, First Claim for Relief, ¶¶ 4(a)-(e).  Plaintiff has not explained in its pleading how it has been injured by these alleged constitutional violations, or even that the Secretary has taken action against Oak Harbor.  Oak Harbor may still raise these constitutional claims through the administrative process as set forth under STAA.[9]  *See* 49

---

[9] In *Brock v. Roadway Express, Inc.*, the Supreme Court addressed an employer's Due Process claim that had been brought in federal district court challenging the Secretary of Labor's preliminary order requiring reinstatement of a discharged employee prior to an evidentiary hearing under STAA (that was then directly appealed to the Supreme Court by the Secretary of

U.S.C. § 31105(b); 29 C.F.R. §§ 1978.104-111. Following this process, if it does not prevail at the administrative level Oak Harbor may then raise these constitutional arguments before the court of appeals. 49 U.S.C. § 31105(d).[10] Oak Harbor barely acknowledges the scope of this process or the prospect of later judicial review and cannot explain why it believes this administrative and judicial review mechanism would not suffice in this case.

---

Labor under 28 U.S.C. § 1252). 481 U.S. at 257. The district court in *Roadway Express* concluded it had jurisdiction because constitutional claims were unsuited to resolution in administrative hearing procedures and STAA's administrative channeling requirement was only for final orders subject to an ALJ hearing, *see Roadway Express, Inc. v. Brock*, 624 F.Supp. 197, 201 (N.D. Ga. 1985). Neither the Supreme Court decision, nor district court opinion, support this court's jurisdiction over Oak Harbor's claims. First, the Supreme Court did not address the district court's reasoning for why it had jurisdiction, but instead stated that it had probable jurisdiction and the case was not moot. *Roadway Express*, 481 U.S. at 257-58. The court is not bound by prior exercises of jurisdiction where the jurisdictional issue was not addressed. *Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1448 (2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed."); *see also Hagans v. Lavine*, 415 U.S. 528, 533, n. 5 (1974) ("[W]hen questions of jurisdiction have been passed on in prior decisions *sub silentio*, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us."). Second, the Supreme Court's decision was based on review of a final order of the Secretary, 481 U.S. at 257-58, whereas in this case, the Secretary has not even issued a preliminary order. Third, the Supreme Court, since *Thunder Basin*, has refused to recognize a constitutional or pre-enforcement exception to the administrative channeling requirement, and in fact, has rejected such arguments in analyzing other administrative channeling statutory schemes. *See Elgin v. U.S. Dep't of the Treasury*, 132 S.Ct. 2126, 2130, 2139 (2012) (government employees subject to adverse employment actions had to administratively exhaust their constitutional claims and seek review in the court of appeals as required by the Civil Service Reform Act). Finally, the Ninth Circuit in *Owner-Operators*, explicitly rejected the reasoning of the *Roadway Express* district court, explaining that courts should construe jurisdictional statutes narrowly and should not exclude a class of cases -- regardless of whether they involve constitutional challenges -- from an administrative channeling requirement. *See* 931 F.2d at 590 & n. 11 (distinguishing the *Roadway Express* district court decision as a "rare situation" involving a challenge to the constitutionality of an agency's enabling statute).

[10] Even if these allegations were viewed as separate constitutional claims, their presence in the complaint should not change the Court's analysis. The Supreme Court in *Thunder Basin* concluded that even an operator's Due Process claim could and should be addressed by the Commission and then by the applicable court of appeals, if necessary. *Thunder Basin*, 510 U.S. at 215 (noting that the Due Process claims could be raised before the Federal Mine Safety and Health Review Commission, and in any case, the statutory and constitutional claims could be meaningfully addressed by the Court of Appeals).

## II.  Oak Harbor Has Failed to Exhaust Its Administrative Remedies

Where relief is available from an administrative agency, a plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; until that recourse is exhausted, suit is premature and must be dismissed. *See Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938); *Heckler v. Ringer*, 466 U.S. 602, 617, 619, and n. 12 (1984). "[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Cavalier Tel., LLC. v. Va. Elec. and Power Co.*, 303 F.3d 316, 322 (4th Cir. 2002) (quoting *Myers*, 303 U.S. at 50-51).  This prohibition includes pre-enforcement challenges or challenges made during the investigatory stage of administrative proceedings.  *See Marshall v. Burlington Northern, Inc.*, 595 F.2d 511, 512 (9th Cir. 1979) (doctrine of exhaustion of administrative remedies required that jurisdictional dispute between OSHA compliance officer and railroad first be ruled upon by the Occupational Safety and Health Review Commission, rather than district court).  This is because "exhaustion ensures that imminent or ongoing administrative proceedings are seen through to completion."  *Ass'n of Flight Attendants-CWA v. Chao*, 493 F.3d 155, 158-59 (D.C. Cir. 2007).  Moreover, the exhaustion doctrine does not permit "an escape hatch for litigants who steer clear of established agency procedures altogether. To the contrary, exhaustion is especially important where allowing the litigants to proceed in federal court would deprive the agency of any opportunity to exercise its discretion or apply its expertise." *Id.* at 159.

Plaintiff has a clear path for administrative review of its claims.  As discussed above, jurisdiction of a federal court to review an employer's claim against the Secretary under STAA is conferred by 49 U.S.C. § 31105(d).  Under this provision, judicial review by the court of appeals is available following a "final order" of the Secretary.  *Id.* (a person may file a petition for review

of "an order issued after a hearing under subsection (b)"); 49 U.S.C. § 31105(b)(2)(C) (establishing that not later than 120 days after the ALJ hearing, the Secretary shall issue a "final order"). The complained-of conduct here – the Secretary's initial decision, which has not yet been issued – is only the first step in the process. If the Secretary decides it is reasonable to conclude that a violation has occurred, the findings and preliminary order are to be included with the Secretary's decision. 49 U.S.C. § 31105(b)(2)(A). However, the adversely affected party (i.e., the employer) then has to file objections to the findings or preliminary order and request a hearing on the record. *Id.* § 31105(b)(2)(B). It is only after that hearing that the Secretary issues a "final order." *See id.* § 31105(b)(2)(C). And it is this "final order" that is the necessary and final step before seeking judicial review in the court of appeals.

In this case, Oak Harbor challenges the anticipated enforcement decision by the Secretary in the case of Oak Harbor employee Shawn Flanery, Compl., ¶¶ 14-17, as well as the complaints of Jeffrey Murillo and Cade Mason filed with OSHA, Compl., ¶¶ 18-19. Specifically, Oak Harbor alleges that it is threatened with investigation and prosecution that could result in payment of back wages to employees, punitive damages, and/or reinstatement of said employees. Compl., ¶¶ 20-21; Third Claim For Relief, ¶ 2(h). Plaintiff claims that existing procedures for administrative review of the anticipated enforcement action against Oak Harbor are inadequate because it might be subject to multiple and inconsistent interpretations of section 392.3. *id.*, Second Claim For Relief, ¶ 5. However, Oak Harbor has not even attempted to employ the administrative remedies available to it. (In fact, no cognizable final agency action has even been taken against Oak Harbor yet, *see infra* at 21-24.) The Department of Labor has carefully laid out the procedures that an adversely affected party should follow to obtain administrative review. *See* 29 C.F.R. §§ 1978.103-108. Regardless of the possibility of inconsistent adjudications

(which can happen with respect to individual claims in any forum), Oak Harbor appears to prefer one forum over another (*i.e.*, federal district court judge, rather than an administrative law judge and then court of appeals panel).[11]  That desire for a different forum, however, is an argument that should be made to Congress, rather than this Court.  *See Heckler v. Ringer*, 466 U.S. 602, 619 (1984) ("Although respondents would clearly prefer an immediate appeal to the District Court rather than the often lengthy administrative review process, exhaustion of administrative remedies is in no sense futile for these respondents, and they, therefore, must adhere to the administrative procedure which Congress has established for adjudicating their Medicare claims.").  Oak Harbor chose not to exhaust its administrative remedies, opting instead to file suit prematurely.  Oak Harbor has failed to exhaust its clearly established remedies under STAA and its claims must therefore be dismissed.

### III. Oak Harbor's Claims are not Reviewable under the APA

"Under settled principles of sovereign immunity, 'the United States, as sovereign, is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Dalm*, 494 U.S. 596, 608 (1990), quoting *United States v. Testan*, 424 U.S. 392, 399 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). "A necessary corollary of this rule is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied." *Block v. North Dakota*, 461 U.S. 273, 287 (1983). The only waiver of sovereign immunity that Oak Harbor could be relying upon in this case is that of the APA, but that waiver "contains

---

[11] Waiver of an administrative exhaustion requirement may be permitted under limited circumstances including where (1) the issue raised is entirely collateral to a claim for benefit; (2) plaintiffs show they would be irreparably harmed were the exhaustion requirement enforced on them; and (3) exhaustion would be futile. *See Bowen v. City of New York*, 476 U.S. 467, 483-85 (1986).  None of these conditions is met here.

several limitations. Of relevance here is § 704, which provides that only '[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court, are subject to judicial review.' 5 U.S.C. § 704." *Gallo Cattle Co. v. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998).[12] Plaintiff's APA claim is barred by these two limitations: Oak Harbor has another adequate (and exclusive) remedy under STAA, and in any case, the proposed settlement offer does not qualify as final agency action under the APA.

## A. Oak Harbor's Claims Are Barred Because There is an Adequate Remedy Outside this Case

Although the APA generally provides for judicial review of an agency action, it does not create a cause of action in a case where Congress has specified other judicial review procedures. In such cases, "[t]he form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute," unless the specified review proceeding is "inadequa[te]."  5 U.S.C. § 703.  Similarly, under 5 U.S.C. § 704, agency

---

[12] There is a divided approach within the Ninth Circuit regarding whether the APA's waiver of sovereign immunity requires the above-mentioned limitations, including that there be "final agency action."  *See Gallo Cattle Co. v. Dep't of Agric.*, 159 F.3d. at 1198 (concluding that APA's waiver of sovereign immunity includes several limitations, including those of § 704). Previously, in *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518 (9th Cir. 1989), the Court of Appeals had held that "§ 702's waiver of sovereign immunity is [not] limited to instances of 'agency action' " as defined by the APA.  *Id.* at 525.  In *E.E.O.C. v. Peabody W. Coal Co.*, the Court acknowledged that the holdings of *Gallo Cattle Co.* and *Presbyterian Church* appear to conflict, but did not resolve the tension on the facts of that case, where the Secretary had mandated the disputed lease terms and there was thus final agency action. 610 F.3d 1070, 1086 (9th Cir. 2010). Applying the reasoning of *Gallo Cattle Co.*, rather than that of *Presbyterian Church*, makes sense here where Oak Harbor seeks interim relief from an agency enforcement action that it believes that it is entitled to by statute and regulation.  *See Gallo Cattle Co.*, 159 F.3d. at 1198-2000.  Moreover, Oak Harbor's second claim for relief specifically alleges that it has standing to bring suit precisely because there is "no other adequate remedy at law" and "final agency action" has occurred.  *See* Compl., Second Claim for Relief, ¶¶ 2-4. Hence, even if these preconditions were not necessary for the APA's waiver of sovereign immunity, Oak Harbor effectively concedes, as it must, that it is still claiming a violation of the APA, and in doing so, it must meet the requirements of 5 U.S.C. § 704 in order to state a claim upon which relief can be granted.

action made reviewable by statute and final agency action "for which there is no other adequate remedy in a court," are subject to judicial review.  5 U.S.C. § 704.  Congress has specified the judicial remedy that is available for Oak Harbor here – an action in the court of appeals contesting a final order of the Secretary.  That remedy is adequate, and hence, Oak Harbor must bring its claims in that proceeding, and not in this APA action.

The APA "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures."  *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (internal quotation and citation omitted).  "When Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies."  *Id.*, *see also Darby v. Cisneros*, 509 U.S. 137, 146 (1993).

Here, Oak Harbor seeks to challenge a settlement proposed by a Department of Labor investigator (which it believes is indicative of impending findings and an anticipated preliminary order) as being contrary to law.  49 U.S.C. § 31105(d) provides Oak Harbor with an adequate – indeed, an exclusive – remedy for a plaintiff who is aggrieved by a final order issued by the Secretary.  Moreover, Congress took care to specify that any action brought by an employer challenging a preliminary order should first be brought before an administrative law judge, and then, if necessary, the Secretary's final order could be reviewed by the relevant court of appeals. In this case, the Secretary has not even issued a preliminary order, but even if such an order were issued during the pendency of this case, Oak Harbor would, by statute, have a remedy following issuance of a final order in the court of appeals.  Any suit brought by Oak Harbor challenging the Secretary's adjudication of Mr. Flanery's complaint (or those of Mr. Murillo and Mr. Mason) is

to be filed in the court of appeals, and Oak Harbor has an adequate legal remedy for all of its claims.  Section 704 thus precludes Oak Harbor from maintaining this suit under the APA.

### B.  There Has Been No Final Agency Order Adversely Affecting Plaintiff

In addition, in asserting an APA basis for its suit, *see* Compl., Second Claim for Relief, ¶ 3, Oak Harbor claims that the Secretary "has labeled his own actions 'final' in the settlement" proposal, thereby making that proposal a "final agency action" reviewable by this court.  *Id.*, ¶ 4. Regardless of Oak Harbor's putative attempt to plead compliance with the requirements of 5 U.S.C. § 704, it cannot cure the gaping hole in its complaint, namely that there is no final agency action in this case.  An agency's communication regarding a proposed settlement of an administrative investigation lacks the force and effect of law and does not constitute final agency action within the meaning of the APA.

Plaintiff purports to challenge not a final order by the Secretary of Labor issued pursuant to 49 U.S.C. § 31105(b)(2)(C), nor even findings and a preliminary order issued pursuant to 49 U.S.C. § 31105(b)(2)(A), but rather what Oak Harbor believes will be the content of the Secretary's decision.  According to plaintiff's complaint, the predicted content of the "Secretary's findings and preliminary order" is all based on communications from an OSHA investigator to Oak Harbor about a proposed settlement of the Flanery complaint.  Compl., ¶¶ 20, 21.  An agency communication regarding the proposed settlement of a complaint prior to the issuance of a preliminary order, like the preliminary order itself,[13] is not "final agency action"

---

[13] As explained above, *see supra* at 4-6, 8-16, Oak Harbor must pursue any relief through the administrative process and court of appeals.  As part of this administrative channeling scheme, plaintiff may not seek judicial review of the Secretary's preliminary order; it must instead request a hearing before an ALJ, after which the Secretary shall issue a final order.  Congress explicitly removed judicial review for those preliminary orders for which an adversely affected party did not seek an administrative hearing.  *See* 49 U.S.C. § 31105(b)(2)(B) ("If a hearing is not requested within the 30 days, the preliminary order is final and not subject to judicial review.").

reviewable under the APA. *Franklin v. Massachusetts*, 505 U.S. 788, 798 (1992) (agency report

that carried "no direct consequences" was not "final agency action"); *see also*, *e.g.*, *Nippon*

*Miniature Bearing Corp. v. Weise*, 230 F.3d 1131, 1137 (9th Cir. 2000) ("final agency action"

must have "legal consequences"); *Ecology Ctr., Inc. v. U.S. Forest Serv.*, 192 F.3d 922, 925 (9th

Cir. 1999) (no "final agency action" where "legal consequences d[id] not necessarily flow" from

agency's action, "nor d[id] rights or obligations arise from it"); *Mt. Adams Veneer Co. v. United*

*States*, 896 F.2d 339, 343 (9th Cir. 1990) (stating numerous indicia of finality under APA,

including that "action should have the status of law").

   As to finality under the APA, the "core question is whether the agency has completed its

decisionmaking process, and whether the result of that process is one that will directly affect the

parties." *Franklin*, 505 U.S. at 797.  As explained above, the Secretary has not issued a

preliminary order or final order regarding the Flanery, Murillo, or Mason complaints.  The June

24, 2013 communication from the investigator to Oak Harbor regarding a proposed settlement

did not have the "status of law," *see Mt. Adams Veneer Co.*, 896 F.2d at 343, nor did its proposed

conditions, which Oak Harbor ultimately rejected, "directly affect" plaintiff, *Franklin*, 505 U.S.

at 797.  Even if the court were to credit Oak Harbor's allegation that the proposed settlement

offer signaled that the Secretary's findings and preliminary order were impending, it would be

wrong to conclude that the Secretary's position in his findings and preliminary order will

necessarily be the same as the settlement position referenced in Oak Harbor's complaint.[14]  A

recent decision by the district for the Northern District of California examined a very similar set

of circumstances (*i.e.*, a target of an investigation running into court and seeking injunctive and

---

[14] Because the Secretary has not entered into a settlement agreement with Oak Harbor, the
government decisionmaking surrounding whether to approve such settlement may not serve as
the basis for a cause of action.  *See*, *e.g.*, *Ruud v. U.S. Dep't of Labor*, 80 Fed. Appx. 12, 14-15,
2003 WL 22417078 (9th Cir. 2003) (unpublished) ("An action to enforce a settlement agreement
is distinct from the Secretary's decision whether to enter into a settlement agreement.").

declaratory relief) and concluded that a settlement offer could not serve as agency action that was "final" in nature. *Ne. Med. Servs., Inc. v. Cal. Dep't of Healthcare Servs.*, No. C 12-2895 CW, 2013 WL 428721 at *5 (N.D. Cal. Feb. 1, 2013). In that case, an Assistant U.S. Attorney wrote a letter to plaintiff stating that the government's review of plaintiff's annual reconciliation reports "supports the allegations made in the *qui tam* action" and plaintiff could be liable under the False Claims Act and invited plaintiff to engage in further settlement discussions. *Id.* at *2. The Court concluded that regardless of whether the letter constituted "action" by HHS, it simply summarizes "preliminary findings" of the investigation and "does not affect Plaintiff's legal rights or obligations." *Id.* at *5. Moreover, the Court pointed out that the letter was marked "FOR SETTLEMENT PURPOSES ONLY" and  the government's deadline for intervening in the *qui tam* matter had not yet expired, all of which indicated that the letter was "of a merely tentative or interlocutory nature" and, thus, not subject to judicial review under the APA. *Id.* at *6. The exact same conclusions should be reached here where the letter cited by Oak Harbor simply recaps the DOL investigator's conclusion, but has not made Oak Harbor subject to any legal requirement or obligation. Accordingly, no final agency action has occurred with respect to Oak Harbor's claim.

### IV. Oak Harbor's Claims Are Not Ripe

Ripeness is an Article III justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). The ripeness inquiry "evaluate[s] both the

fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149.

As an initial matter, ripeness depends on whether an agency has completed its decision-making process and whether the result of the ongoing process will affect the parties. *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 780 (9th Cir. 2000). Thus, a court should determine "whether the administrative action is a definitive statement of an agency's position; whether the action has a direct and immediate effect on the complaining parties; whether the action has the status of law; and whether the action requires immediate compliance with its terms." *Id. See Ukiah Valley Med. Ctr. v. Fed. Trade Comm'n*, 911 F.2d 261, 264 (9th Cir. 1990) ("The general rule is that administrative orders are not final and reviewable unless and until they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process.") (internal quotations and citation omitted). "Informal" or "tentative" agency regulations are not likely to be considered final. *See Abbott Laboratories*, 387 U.S. at 151.

In this case, Oak Harbor's legal challenge regarding the interpretation of both 49 U.S.C. §31105 and 49 C.F.R. § 392.3 requires further factual development – in the administrative forum – in order for a court to adjudicate its legal claims. This Circuit has repeatedly counseled against attempting to resolve legal disputes regarding tentative agency decisions at the investigatory stage. *See Ass'n of Am. Med. Colls.*, 217 F.3d at 781 ("[a]n investigation, even one conducted with an eye to enforcement, is quintessentially non-final as a form of agency action."); *Winter v. Cal.Med. Review, Inc.*, 900 F.2d 1322, 1325 (9th Cir. 1990) (since the agency's conclusions could change with additional information, "[a]ppellants claim that the investigation itself represented final agency action lacks merit . . . . This court must give the agency an opportunity

to formulate a final position."). The agency's conclusion of its investigation and issuance of a final order will assist any eventual judicial review before this court, or more properly, before the court of appeals in several respects. First, there is a question as to whether the three complainants have put forth substantial evidence (which would be evaluated at the administrative level) as to whether they were ill or fatigued within the meaning of the regulation and when and how this information was communicated to Oak Harbor. *See* Compl., ¶ 24 (speculating about how the Secretary may or may not prosecute these three complaints). Second, there is a mixed question of law and fact (with factual questions to be resolved at the administrative level, of course) as to whether the employees were discharged, disciplined, or discriminated against, based on a filing of a complaint or refusal to operate a vehicle. *See* Compl., ¶ 26. Third, to the extent that Oak Harbor is seeking an agency decision regarding the lawfulness of its current attendance policy, there is an open question (again, a question to be resolved by the administrative decision-makers) as to how that attendance policy operates in practice and its effect on workers who file OSHA complaints or refuse to operate a vehicle. *See* Compl., ¶ 28. And even if the issues presented here were "purely legal," *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 163 (1967), it remains uncertain whether the Secretary will ultimately issue a final order after the administrative process is complete, thereby creating a justiciable case or controversy. Because it is, as of yet, unclear how the agency's investigation will conclude, what its final determination will be, and what evidence it will rely upon, all three of Oak Harbor's claims are not fit for judicial review.

Nor has Oak Harbor established that it would suffer hardship in the absence of judicial intervention. "To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial

loss." *U.S. W. Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999) (internal

quotation marks omitted).  Thus, Oak Harbor would need to show that the challenged

investigation would result in "an immediate and significant change in [Oak Harbor's] conduct of

their affairs with serious penalties attached to noncompliance." *Ass'n of Am. Med. Colls.*, 217

F.3d at 783.  Here plaintiff has shown no hardship at all.  At best, it points to a lingering fear that

its attendance policy will be held unlawful, *see* Compl., Third Claim For Relief, ¶2(h), and/or

that it will forced to pay punitive damages pursuant to a final order of the Secretary.  *See* Compl.,

First Claim For Relief ¶ 10.  Regardless of its allegations of constitutional deficiencies with the

agency's procedures for resolution of employee complaints, *see* Compl., First Claim For Relief ¶

4(d)-(e), Oak Harbor does not (and cannot) allege that at this point it has been harmed by any

action taken by the Secretary.  And even if the Secretary were to reach a decision and issue

findings and a preliminary order, Oak Harbor is not required to immediately comply if it files a

timely objection and requests a hearing.  *See* 29 C.F.R. § 1978.106 (any party who desires

review, including judicial review, must file any objections and a request for a hearing within

thirty days.  If a timely objection is filed, "all provisions of the preliminary order will be stayed,

except for the portion requiring preliminary reinstatement").[15]  At this point, the Secretary has

not issued findings and a preliminary order, much less a final order.  Thus, the uncertainty

regarding the outcome of the investigation combined with the lack of immediate harm to Oak

Harbor render the current dispute not ripe for review.

---

[15] Oak Harbor also retains the ability to file a motion with the administrative law judge for a stay of the preliminary reinstatement (although such stays are only granted based on exceptional circumstances).  29 C.F.R. § 1978.106(b).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss all of

plaintiff's claims for lack of subject matter jurisdiction, or in the alternative, for failure to state a

claim upon which relief can be granted.


Respectfully submitted this 3rd day of September, 2013.

STUART F. DELERY
Assistant Attorney General
JUDRY L. SUBAR
Assistant Branch Director,
Federal Programs Branch

_/s/ Bradley H. Cohen_____
BRADLEY H. COHEN
Trial Attorney